IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **ROBIN ZAK ARMSTRONG, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| **v.** ] | Case No.: 4:16-cv-01065-ACA |
| ] | |
| **QUENTIN SCOTT, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

Plaintiffs Robin Zak Armstrong and Timothy-Brian Armstrong, proceeding *pro se*, filed this unlawful detention action after they were arrested at a driver's license checkpoint operated by the Boaz City Police Department. The Plaintiffs allege that they were unlawfully detained after Boaz City Police Officers Quentin Scott and Brandon Hester failed to bring them before a magistrate judge for a probable cause determination immediately after their arrests. On July 24, 2017, the court (Hopkins, J.) granted in part and denied in part the Defendants' motion to dismiss the third-amended complaint. (Doc. 81 at 59–60). As a result of the court's ruling, the only remaining claims in this action are: (1) Mrs. Armstrong's unlawful detention claim against Officer Hester (Count VII) and (2) Mr. Armstrong's unlawful detention claim against Officer Scott (Count XII). (*Id.*).

This matter is currently before the court on the Defendants' motions for summary judgment. (Doc. 148; Doc. 149). The motions have been fully briefed and the issues are ripe for review. (Doc. 150; Doc. 157; Doc. 160). For the reasons explained below, the court **WILL GRANT** the Defendants' motions.

I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the nonmoving party. *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

II. FACTS

The court previously set forth the procedural history of this action in its memorandum opinion and order denying the Plaintiffs' motion for leave to amend their complaint. (Doc. 168). The court incorporates the procedural history

contained in that opinion and provides the following summary necessary to address the current motion.

On May 28, 2016, the Boaz Police Department operated a driver's license checkpoint at the intersection of County Road One and Double Bridges Road. (Doc. 46 at 34). The purpose of the checkpoint was to target uninsured motorists and unlicensed drivers. (Doc. 151-5 at 59). That afternoon, at approximately 3:08 p.m., a white Ford truck entered the checkpoint driven by Mr. Armstrong. (Doc. 46 at 34; Doc. 151-2 at 6). Mrs. Armstrong accompanied Mr. Armstrong in the front passenger seat. (*Id.*).

At the checkpoint, Officer Michael Hempel approached Mr. Armstrong's vehicle and asked for his driver's license. (Doc. 46 at 34; Doc. 151-5 at 59). In response, Mr. Armstrong explained that he did not need a driver's license because "he was a man [acting] in his private capacity and that he was not using the public roads for any commercial activity." (Doc. 46 at 11, 34). Officer Hempel activated his body cam and proceeded to ask Mr. Armstrong for other identifying information including his name, social security number, and date of birth. (*Id.* at 34). Mr. Armstrong provided only his first and last name. (*Id.*).

Officer Hempel went to his patrol car to run this information, but was unable to determine whether Mr. Armstrong held a valid driver's license. (*Id.*). Officer Hempel then returned to Mr. Armstrong's vehicle accompanied by Officer Quentin

3

Scott and advised Mr. Armstrong that he was required to have a driver's license while operating a motor vehicle on the public roadways. (Doc. 46 at 15, 34). At this point, Mrs. Armstrong began to record the officers with a video camera and stated "that sounds like a threat." (*Id.* at 34).

Officer Hempel told Mr. and Mrs. Armstrong that he was "not there to play games" and ordered Mr. Armstrong to exit the vehicle. (*Id.*). Mr. Armstrong refused to follow Officer Hempel's orders and asked permission to reach for his wallet. (*Id.*). Out of concern for his safety, Officer Hempel explained that he "would rather [Mr. Armstrong] not reach for anything" and asked him to exit the vehicle a second time. (Doc. 46 at 34). Mr. Armstrong again refused to vacate the vehicle, telling Officer Hempel to "hold on a second." (*Id.*). Officer Hempel opened the driver's side door, unfastened Mr. Armstrong's seatbelt, and removed him from the vehicle. (*Id.*). Once Mr. Armstrong was outside of the vehicle, Officer Hempel placed him under arrest for obstructing a government operation. (*Id.*). Officer Scott escorted Mr. Armstrong to the backseat of his police cruiser. (Doc. 46 at 34–35).

After Mr. Armstrong was taken into custody, Officer Hempel directed his attention to Mrs. Armstrong. (*Id.* at 35). Officer Hempel explained that Mrs. Armstrong could leave with the vehicle if she presented a valid driver's license. (*Id.*). Mrs. Armstrong refused to provide Officer Hempel with her license and

4

continued to film the officers with her video camera. (*Id.*). Without another driver available to remove the vehicle, Officer Hempel called for a tow truck and told Mrs. Armstrong that the vehicle would be impounded. (Doc. 46 at 35). When Officer Hempel opened the driver's side door to retrieve the keys, Mrs. Armstrong pushed his hand away from the ignition and claimed "it was her private property." (*Id.*). Officer Hempel directed Mrs. Armstrong to step out of the vehicle and placed her under arrest for obstructing a government operation. (*Id.*).

Officer Scott drove the Armstrongs to the Boaz City Jail. (Doc. 151-6 at 11). On the way, Mr. Armstrong asked Officer Scott to bring him directly before a magistrate judge for a probable cause hearing. (Doc. 46 at 16; Doc. 151-8 at 10, 26). Officer Scott informed Mr. Armstrong that the magistrate's office was closed for the holiday weekend and estimated it could take seventy-two hours to fulfill his request. (Doc. 151-5 at 36–37; Doc. 151-8 at 10, 26; Doc. 46 at 31).

When the Armstrongs arrived at the jail, they were directed to Officer Brandon Hester for booking. (Doc. 151-5 at 22). Officer Hester began the administrative booking and intake procedures with Mrs. Armstrong at 4:28 p.m. (Doc. 151-2 at 15). Mrs. Armstrong requested that Officer Hester take her before a magistrate judge, but was also told it could take up to seventy-two hours to go before the magistrate judge because of the holiday weekend. (Doc. 46 at 13, 24–25). Unsatisfied with this response, Mrs. Armstrong refused to cooperate in the

5

booking process.  (*Id.* at 13, 35; Doc. 151-1 at 3).  As a result, Officer Hester placed Mrs. Armstrong in a holding cell and informed her that she would not be released from custody until she "answered [his] questions and provided fingerprints and photographs."  (Doc. 46 at 39).  Less than one hour later, Mrs. Armstrong agreed to comply with Officer Hester and completed all of the necessary booking procedures.  (*Id.*).

While Mrs. Armstrong was confined in the holding cell, Officer Hester turned his attention to Mr. Armstrong.  (Doc. 151-2 at 21).  Officer Hester began processing Mr. Armstrong's booking information at 5:50 p.m.  (*Id.*).  Mr. Armstrong answered Officer Hester's screening questions, and allowed the officers to obtain his photograph and fingerprints.  (Doc. 151-1 at 3).  By 6:42 p.m., Mr. and Mrs. Armstrong completed all necessary booking procedures and were released from the Boaz City Jail after posting a $500 surety bond.  (Doc. 151-1 at 3, 6, 8; Doc. 151-2 at 15, 21; Doc. 151-3 at 6–8).

## III. DISCUSSION

Mr. and Mrs. Armstrong claim that the Defendants violated their right to be brought directly before a magistrate judge, as required under Alabama law.  They also allege the officers' *threat* that a probable-cause hearing would not be held for seventy-two hours following their arrests constitutes a violation of their rights under the Fourth Amendment to the United States Constitution.  Defendants argue

6

they are entitled to judgment as a matter of law on these remaining claims because the Plaintiffs are unable to establish that Officers Scott and Hesters' conduct amounted to a violation of either their constitutional rights or federal law as required under § 1983. Additionally, the Defendants argue they are entitled to qualified immunity because the law does not clearly establish the right to be free from the threat of a prolonged detention. The court will address each of the Plaintiffs' claims in turn.

   A. *Claims under § 1983 for violation of state law*

Plaintiffs allege that Officers Scott and Hester were required to bring them before a magistrate judge for a probable cause determination immediately after their arrests. To establish a cause of action under 42 U.S.C § 1983, Mr. and Mrs. Armstrong must show: (1) that Officers Scott and Hester deprived them of a right secured by the federal Constitution or laws of the United States and (2) acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In support of their claim, the Armstrongs allege that the officers violated Ala. Code §§ 32-1-4 and 32-5-310 by "failing to . . . secure a probable cause hearing for [Plaintiffs], despite the fact that the law states that any arrestee must be immediately taken to the nearest court having jurisdiction." (Doc. 157 at 3–4). However, because this claim is predicated on state law as opposed to an alleged violation of a federal right, it necessarily fails to state a claim under § 1983.

The Eleventh Circuit has recognized that "[s]ection 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) (citing *Paul v. Davis,* 424 U.S. 693, 698–99 (1976)). And, there is no federal right to be brought immediately before a magistrate judge for a probable cause determination. *Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 57 (1991) ("[w]here an arrested individual does not receive a probable cause determination within 48 hours . . . the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance."). Therefore, while a violation of Ala. Code §§ 32-1-4 and 32-5-310 may give rise to a state tort claim, it does not support a claim under § 1983.

In the absence of a deprivation of a federal right, the court **WILL GRANT** summary judgment in favor of the Defendants on Mr. and Mrs. Armstrongs' § 1983 unlawful detention claims.

### B. *Claims under § 1983 for a Fourth Amendment violation*

Plaintiffs also contend that Officers Scott and Hester violated their Fourth Amendment rights by failing to bring them directly before a magistrate judge for a probable cause determination. Defendants argue they are entitled to summary judgment on the Plaintiffs' Fourth Amendment wrongful detention claims because Mr. and Mrs. Armstrong were in custody for less than forty-eight hours.

8

It is well established that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). The Eleventh Circuit has held that "[d]etention of a suspect beyond forty-eight hours without a determination of probable cause violates an individual's rights under the Fourth Amendment, and if the determination is made within forty-eight hours of arrest, the complaint must prove that his determination was unreasonably delayed." *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) (quoting *McLaughlin*, 500 U.S. at 56). Therefore, Mr. and Mrs. Armstrong must prove that their short detention was unreasonably delayed.

In this case, Mr. and Mrs. Armstrong were arrested at 3:08 p.m. for obstructing a government operation, began the booking process at the Boaz City Jail ninety minutes later, and were released from jail after posting bond at 6:42 p.m. (Doc. 151-2 at 15–19, 21–25). The three and a half hours they spent in custody is well within the forty-eight hour requirement. The Armstrongs have not shown the existence of any facts or made any arguments that their detention was unreasonably delayed during the three and a half hours they were in custody. In fact, the only evidence suggesting any delay in the booking process was caused by Mrs. Armstrong, not Officers Scott and Hester. Under the facts of this case, Officers Hester and Scott are entitled to summary judgment because there is no

constitutional requirement that the police "provide a probable cause hearing immediately upon taking [Mr. and Mrs. Armstrong] into custody and completing booking procedures," and the Armstrongs have failed to otherwise demonstrate that their time in custody was unreasonably delayed. *McLaughlin*, 500 U.S. at 53–54; *see also Eslinger*, 555 F.3d at 1330.

Accordingly, the court **WILL GRANT** summary judgment for Defendants on the Plaintiffs' Fourth Amendment wrongful detention claims.

C. *Threat to commit a Fourth Amendment violation*

Plaintiffs also claim that Officers Scott and Hester violated their Fourth Amendment rights by threatening to hold them in jail for up to seventy-two hours without a judicial probable cause determination. Officers Scott and Hester maintain that, even if they committed a constitutional violation by threatening to violate the Armstrongs' constitutional rights, they are qualifiedly immune from suit.

Officers Hester and Scott argue they are entitled to qualified immunity because the alleged right to be free from threats of a possible constitutional violation was not clearly established at the time Mr. and Mrs. Armstrong were arrested. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In this case, it is undisputed that Officers Hester and Scott were acting within the scope of their discretionary authority when they informed the Armstrongs that a magistrate may be unavailable for seventy-two hours. Consequently, the burden shifts to the Armstrongs to establish that Officers Scott and Hester violated their constitutional rights and that the rights involved were "clearly established" at the time of the putative conduct. *Terrell v. Smith*, 668 F.3d 1244, 1249–50 (11th Cir. 2012). In deciding a motion for summary judgment, the court is permitted to decide which of these two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Because the Armstrongs' "complaint is one 'in which it is plain that a constitutional right [was] not clearly established,' the court's analysis begins and ends with the second inquiry of the test for qualified immunity. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (citing *Pearson*, 555 U.S. at 237). The determination of whether a federal right is clearly established is case specific; the question is "whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Loftus,* 690 F.3d at 1204 (citing *Vinyard v. Wilson,* 311 F.3d 1340, 1350 (11th Cir. 2002)).

In order for the Armstrongs to show that the constitutional violation was clearly established, they must demonstrate: (1) "that a materially similar case has already been decided, giving notice to the police;" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)). Additionally, the Armstrongs "must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of [Alabama]" to show that the constitutional violation was clearly established. *Keating*, 598 F.3d at 766. If the Armstrongs cannot demonstrate that the right was clearly established using any of these three ways, then the officers are entitled to qualified immunity.

The Armstrongs fail to present, and the court has not been able to find, any binding precedent—or broad principle—establishing that the mere *threat* of a constitutional violation is in itself a constitutional violation. And, the Armstrongs do not argue that Officer Hester and Scotts' conduct *obviously* violated the Constitution. Accordingly, because the Armstrongs have failed to prove that Officer Hester and Scotts' verbal threats violated a well-established federal right, the court **WILL GRANT** summary judgment for Defendants on this claim.

## IV. CONCLUSION

For the reasons stated above, the court **WILL GRANT** the Defendants' motions for summary judgment and **WILL** enter judgment as a matter of law. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 27, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE